IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

BERNARD RALPH GRAVES,
    Petitioner,

vs.                                       Case No. 3:10cv375/WS/MD

MIKE BABCOCK,
    Respondent.

___

## REPORT AND RECOMMENDATION

This cause is before the court upon a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Doc. 1). Respondent has filed a response (doc. 9), and petitioner has filed a reply, which was styled "petitioner's motion for summary judgment." (Doc. 11).

Petitioner Bernard Graves is a federal inmate currently incarcerated at the Federal Prison Camp in Pensacola, Florida with a projected release date of November 19, 2011. In this habeas proceeding, petitioner raises a single ground for relief. He contends the Federal Bureau of Prisons ("BOP") has abused its discretion in interpreting the Second Chance Act ("SCA") 18 U.S.C. § 3624(c) and thus precluded him from receiving the full 12-month CCC placement. He sought an administrative remedy at the institutional level on May 20, 2010 which was denied on June 3, 2010. (Doc. 9, att. A). He filed an appeal at the regional level on June 11, 2010 which was denied on June 28, 2010. (Doc. 9, att. A). His appeal at the national level, filed August 12, 2010, was rejected without response as untimely on August 24, 2010. (Doc. 9, att. A).

**Administrative Exhaustion**

Even before addressing the underlying merits of the petition, the respondent contends that the petition should be dismissed due to the petitioner's failure to exhaust his administrative remedies. The BOP provides a four-level administrative grievance procedure for prisoner complaints. 28 C.F.R. § 542.10-542.16. Initially, prisoners must seek resolution of issues through informal grievances. *Id*. at § 542.13(a). If unsuccessful, an inmate may then file a formal written complaint with the institution. *Id*. at § 542.13(b). An appeal may then be taken to the Regional Director. *Id.* at § 542.15. Finally, an inmate may appeal the Regional Director's response to the General Counsel for the BOP. *Id*. Appeal to the General Counsel is the final administrative appeal. Before seeking habeas relief, including relief pursuant to 28 U.S.C. § 2241, prisoners must satisfy administrative exhaustion requirements. *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir.), *cert. Denied*, 124 S.Ct. 2112 (2004); *Winck v. England*, 327 F.3d 1296, 1300 n. 1 (11th Cir. 2003) (recognizing that although there is no statutory requirement that a federal inmate exhaust his administrative remedies prior to filing a § 2241 writ of habeas corpus, exhaustion is jurisdictional in the Eleventh Circuit); *Gonzalez v. United States*, 959 F.2d 211, 212 (11th Cir. 1992) (citing *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir.1990) (requirement that prisoners exhaust administrative procedures prior to seeking relief in district court is jurisdictional)); *United States v. Mitchell*, 845 F.2d 951, 952-53 (11th Cir. 1988) (district court does not have jurisdiction to entertain petition seeking sentence credit until defendant has exhausted his administrative remedies; after final administrative decision, a dissatisfied prisoner may seek review of that decision) (citation omitted); cf. *Boz v. United States*, 248 F.3d 1299, 1300 (11th Cir. 2001) (per curiam) (Also jurisdictional is "[t]he general rule ... that a challenge to agency actions in the courts must occur after available administrative remedies have been pursued.") (internal quotation marks and citation omitted). Each of the aforementioned steps is generally required to satisfy the exhaustion prerequisite.

Respondent contends that the untimely filing of the final level of appeal to the General Counsel renders petitioner's attempt at exhaustion unsuccessful, as he failed to follow the rules governing the filing and prosecution of his claim. See *Woodford v. Ngo*, 548 U.S. 81, 92-93,126 S.Ct. 2378, 2387-2389 (2006) (the PLRA requires proper exhaustion, and does not allow prisoner litigants to bypass meaningful use of the administrative grievance process by filing untimely grievances); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) (prisoner must follow the rules governing filing and prosecution of his claim in order to properly exhaust administrative remedies).

Respondent is technically correct about the untimeliness of the petitioner's submission. Title 28 C.F.R. § 542.15(a) provides that the ordinary appeal time (within 30 calendar days of the date the Regional Director signed the response) may be extended when the inmate "demonstrates a valid reason for delay." In this case, although the response was dated June 28, 2010, petitioner has presented an inmate request with a response from staff member Aguardo reflecting that he did not receive the response until July 26, 2010. (Doc. 1, att. A at 10, 11; doc. 1 at electronic docket "ed" 41, 47 & 48). This information was presented to the General Counsel in petitioner's appeal and would appear to present a "valid reason for delay" as contemplated by 28 C.F.R. § 542.15. (*Id.*) Nonetheless, respondent has submitted an affidavit from Ruth Wombacher, Legal Instruments Examiner, indicating that petitioner's appeal was "rejected without response for being untimely on August 24, 2010." A copy of this rejection is not in the file and petitioner himself states that he has not yet received any such document. (Doc. 11 at 3). In fact, he contends that his administrative remedies were exhausted because the BOP's General Counsel's failure to timely respond to his request was tantamount to a denial of his last remedy. (Doc. 1, petition at 5-6). It is not this court's place to micro-manage the BOP's handling of the administrative grievance process. However, the court is not

convinced based on the record before it that petitioner failed to exhaust his administrative remedies, and therefore it will examine the merits of his claim.

**Application of Statutory and Regulatory Framework**

> **Previously, 18 U.S.C. § 3624(c) directed that the BOP:**
>
> **shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement. The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during such pre-release custody.**

18 U.S.C. § 3624(c), *amended*, Pub.L. No. 110-199, Title II, § 251(a), 122 Stat. 657 (2008). The Second Chance Act of 2007, enacted on April 9, 2008, altered the BOP's authority in making RRC placement decisions under 18 U.S.C. § 3624(c). That section now provides:

> **(1) In general.-The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.**
>
> **(2) Home confinement authority.-The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.**
>
> **(3) Assistance.-The United States Probation System shall, to the extent practicable, offer assistance to a prisoner during prerelease custody under this subsection.**

      **(4) No limitations.-Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.**

18 U.S.C. § 3624(c)(1)-(4). The Act also amended § 3624(c) to require:

      **(6) Issuance of regulations.-The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is-**

      **(A) conducted in a manner consistent with section 3621(b)[1] of this title;**

      **(B) determined on an individual basis; and**

      **(C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.**

18 U.S.C. § 3624(c)(6) (footnote added).

The BOP amended its regulations on October 21, 2008, to provide for possible placement in an RRC for up to twelve (12) months. *See* 28 C.F.R. § 570.21; 73 Fed. Reg. 62440, 62443 (Oct. 21, 2008). Section 570.21 now provides, in pertinent part:

      **(a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.**

      **(b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.**

---

[1]Under § 3621(b), the BOP may designate that a prisoner be housed in a facility that it determines is "appropriate and suitable, considering," among other factors, "(1) the resources of the facility contemplated; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence . . . ; and (5) any pertinent policy statement issued by the Sentencing Commission." 18 U.S.C. § 3621(b)(1)-(5).

*Case No: 3:10cv375/WS/MD*

28 C.F.R. § 570.21.

In order to comply with the SCA, before new policies and regulations were drafted, the BOP issued memoranda instructing staff how to apply the statute. (Doc. 10, att. B & C). These memoranda provide that when an inmate approaches the end of his or her term of imprisonment, the Unit Team must consider whether to refer the inmate to a Community Corrections program to facilitate re-entry into society. See also doc. 9, att. D, Program Statement 7310.04(12). If the Unit Team wishes to make an institutional referral, it provides a package of information to the warden, who, upon approval, passes the information to the appropriate Community Corrections Manager ("CCM"). P.S. 7310.04(12)(a). The referral must be done at least 60 days prior to the maximum recommended range or date of the CCC confinement. *Id.* The CCM forwards the referrals to appropriate CCCs in an attempt to locate an appropriate placement. P.S. 7310.04(c) and (d). The Program Statement contemplates that not all referrals will be successfully placed. P.S. 7310.04(d). If an inmate is accepted, the transfer date is established and entered into the inmate's profile. P.S. 7310.04(e).

Petitioner contends that on April 7, 2010, he was recommended for a six month placement in a CCC, not the 12 month placement he had repeatedly requested. He now seeks habeas relief to remedy what he contends is the respondent's unlawful denial of his request to be placed in a Community Confinement Center ("CCC"), also known as a "Residential Reentry Center" ("RRC") or "halfway house" for the full 12 month period provided for in the SCA. He asserts that respondent did not make an individualized and good faith determination that the placement was "of sufficient duration to provide the greatest likelihood of successful reintegration into the community" as required by 18 U.S.C. § 3624(c)(6). He further contends that respondent erroneously refused to consider him for the full 12-month placement as an incentive for his extensive participation in educational and skills based training during his incarceration.

In response, respondent notes that the BOP has the discretion to house the petitioner in whatever facility it deems suitable and appropriate, and is under no duty to either release or transfer petitioner before the expiration of his term of imprisonment. 18 U.S.C. § 1621(b); (Doc. 9 at 10). Respondent has submitted the affidavit of Paul Anderson , a Unit Manager who was part of the petitioner's Unit Team. (Doc. 9, att. E). Anderson avers that on the date of the RRC review, petitioner was present and allowed to provide relevant information to the Unit Team for its consideration in determining the appropriate RRC placement. (Doc. 9, att. E at 1). The Unit Team considered (1) the resources of the facility contemplated; (2) the nature and circumstances of the petitioner's offense; (3) his history and characteristics. (Doc. 9, att. 5 at 3).[2] Among the information considered was the availability of beds at FPC Pensacola, petitioner's offense of conviction, his non-violent history, the fact that he was a minimum security inmate, has four children, a bachelor's degree, a Christian ministry degree, a current residence, a history of owning a lucrative business, a history of working in real estate and has participated actively in BOP programming. (*Id.*). After its RRC review, the Unit Team determined that petitioner required a 180 day RRC placement. (Doc. 9, att. E at 4). The warden approved this recommendation, the paperwork was forwarded to the CCM's office, and petitioner was scheduled to transfer to an RRC on May 25, 2011, which would afford him 178 days of RRC placement. (Doc. 9, att. E at 4). Unit Manager Anderson asserts that the team's consideration of petitioner's placement was not limited to 6 months based on the April 14, 2008 memorandum or any other reason.[3] Although Anderson does not expressly so state, he appears to distinguish petitioner's successful work history, educational background, family support and having a place

---

[2] The last two factors enumerated in 18 U.S.C. § 3621(b) were not considered because the sentencing court had made no relevant statements. (Doc. 9, att. 5 at 4).

[3] Respondent notes that the BOP memorandum issued on June 24, 2010 (doc. 9, att. C) removed the requirement that the Regional Director approve placements longer than six months. Because petitioner's review took place on April 7, 2010, this would not have had an impact on his case.

to live from the situation of other inmates, (see doc. 9, att. 5 at 4), with the conclusion that these characteristics would justify less than the maximum RRC placement. This affidavit contradicts petitioner's bald, unsubstantiated assertion that the team did not consider his individual circumstances, as required by statute and regulations.

Furthermore, to the extent that the petitioner asserts that he is "entitled" to a full 12 months of RRC placement as an incentive under 42 U.S.C. § 17541, he is mistaken. The language of the statute creates no entitlement. Instead, it provides in relevant part:

> (2) incentives for a prisoner who participates in reentry and skills development programs which may, at the discretion of the Director, include–
> (A) the maximum allowable period in a community confinement facility; and
> (B) such other incentives as the Director considers appropriate (not including a reduction of the term of imprisonment.

42 U.S.C. § 17541(2).

Similarly, petitioner is not entitled to a twelve month RRC placement as an incentive or reward for having completed the non-residential drug abuse program. The Program Statement upon which he relies, 5330.11 states in part that "[e]ach Warden is *strongly encouraged* to approve inmates who successfully complete the non-residential drug abuse program for the maximum period of RRC placement." 5330.11, chapter 2, page 7, 2.4.8.b. (Emphasis added). This Program Statement does not create an entitlement to the maximum RRC placement, and does not provide petitioner with relief.

Case No: 3:10cv375/WS/MD

**Accordingly, it is respectfully RECOMMENDED:**

**That petitioner's motion for summary judgment (doc. 11) be DENIED and the petition for writ of habeas corpus (doc. 1) be DENIED and the clerk directed to close the file.**

**At Pensacola, Florida, this 20th day of January, 2011.**

/s/ *Miles Davis*
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof. A copy of objections shall be served upon all other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts*, **858 F.2d 698, 701 (11th Cir. 1988).**